T.C. Memo. 2012-323

UNITED STATES TAX COURT

SANDY GOOD, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13413-10.                        Filed November 20, 2012.

Sandy Good, pro se.

<u>Horace Crump</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in petitioner's

Federal income tax and additions to tax under sections 6651(a)(2) and (f) and

6654(a)[1] as follows:

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

**[*2]**

| Year | Deficiency | Additions to tax | | |
|---|---|---|---|---|
| | | Sec. 6651(a)(2) | Sec. 6651(f)[1] | Sec. 6654(a) |
| 2002 | $15,889 | $3,972 | $11,520 | $531 |
| 2003 | 16,403 | 4,101 | 11,892 | 423 |
| 2004 | 64,969 | 16,242 | 47,103 | 1,862 |
| 2005 | 44,044 | To be determined[2] | 31,932 | 1,767 |
| 2006 | 12,705 | To be determined[2] | 9,211 | 601 |

[1]Alternatively, respondent determined that petitioner is liable for additions to tax under sec. 6651(a)(1) if we conclude that he is not liable for the additions to tax under sec. 6651(f).

[2]The sec. 6651(a)(2) addition to tax is 0.5% of the amount of tax shown on the return, with an additional 0.5% per month during which the failure to pay continues, up to a maximum of 25%. In the notice of deficiency respondent did not calculate the amounts of the sec. 6651(a)(2) additions to tax for 2005-06 because the period necessary to support the assertion of the maximum penalty amount under sec. 6651(a)(2) had not yet been attained.

The issues for decision are: (1) whether and if so to what extent petitioner had unreported income for the years in issue; (2) whether petitioner is liable for self-employment tax under section 1401 for the years in issue; (3) whether petitioner was required to file Federal income tax returns for the years in issue; (4) whether petitioner is liable for additions to tax under section 6651(f) for fraudulent failure to file Federal income tax returns for the years in issue; (5) whether petitioner is liable for additions to tax under sections 6651(a)(2) and 6654(a) for the years in

[1](...continued)
Code (Code) in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

**[\*3]** issue; and (6) whether we should impose a penalty under section 6673(a)(1). Because petitioner maintains that as a minister of God he had no income, we will first address whether petitioner operated a church and whether he was a minister.

## FINDINGS OF FACT

Some of the facts have been deemed established for purposes of this case in accordance with Rule 91(f).[2] The deemed facts are incorporated herein by this reference. Petitioner resided in Alabama when he filed his petition.

---

[2]On March 4, 2011, respondent filed a motion to show cause why proposed facts and evidence should not be accepted as established under Rule 91(f) and attached a proposed stipulation of facts. By order dated March 8, 2011, this Court ordered that petitioner file a response to respondent's motion in accordance with Rule 91(f)(2) on or before March 28, 2011. Petitioner failed to file a response to respondent's motion that complied with Rule 91(f)(2). By order dated April 7, 2011, this Court made the order to show cause under Rule 91(f) absolute and deemed established the facts and evidence set forth in respondent's proposed stipulation of facts. On April 12, 2011, petitioner electronically submitted a document titled "Response to Respondent's Stipulation of Facts". By order dated April 13, 2011, this Court granted petitioner leave to file the response out of time because petitioner had attempted to respond timely. By that same order, this Court vacated its order of April 7, 2011 and ordered the Clerk of the Court to file petitioner's "Response to Respondent's Stipulation of Facts" as petitioner's response to the Court's March 8, 2011, order to show cause. By order dated April 26, 2011, this Court made the order to show cause under Rule 91(f) absolute and deemed established the facts and evidence set forth in respondent's proposed stipulation of facts.

[*4] I.     Background

After serving in the U.S. Air Force in Germany and receiving an honorable discharge in 1976, petitioner attended school and worked at various jobs until 1993, when he and his wife, Kathi Good, moved to Florida.

Sometime after moving to Florida, petitioner and Mrs. Good built a house at 32210 Bartel Street for their family. Because of the influx of people moving into the Pensacola area, petitioner and Mrs. Good decided to build a second house at 32188 Bartel Street. Petitioner and Mrs. Good subsequently moved into the house at 32188 Bartel Street. On a date not apparent from the record, petitioner and Mrs. Good also acquired property at 13450 County Road 91. Petitioner initially titled all three properties in his name.

II.    Prepare the Way Ministries

A.    Background

In 1999 petitioner founded Prepare the Way Ministries. He did not consult with a certified public accountant about the tax aspects of operating through Prepare the Way Ministries. Petitioner, however, performed some research

[*5] regarding Federal taxation and also read a book by Joseph N. Sweet[3] regarding ministries and taxation.

In 1999 petitioner also established Treasures in a Field Investments,[4] an unincorporated business trust organization (UBTO).  He used Treasures in a Field Investments to conduct transactions and to make conveyances.  Petitioner, acting through Treasures in a Field Investments, received and deposited funds into various trust accounts and used funds from trust accounts to pay his business and personal living expenses.

---

[3]Mr. Sweet has been permanently enjoined from "[o]rganizing, promoting, marketing, or selling the tax shelter, plan, or arrangement entitled 'GOOD NEWS for FORM 1040 Filers" and from "[o]rganizing, promoting, marketing, or selling 'Unincorporated Business Trust Organizations' (a/k/a 'UBTOs') or any other abusive tax shelter, plan, or arrangement that incites taxpayers to attempt to violate the internal revenue laws".  United States v. Sweet, 89 A.F.T.R.2d (RIA) 2002-2189 (M.D. Fla. 2002).  Pursuant to Fed. R. Evid. 201, we take judicial notice of the District Court's order with respect to Mr. Sweet.

[4]David Marvin Swanson d.b.a. Dynamic Monetary Strategies, created the Treasures in a Field Investments trust organization for petitioner.  On November 15, 2006, the U.S. District Court for the Middle District of Florida, Tampa Division, permanently enjoined Mr. Swanson from, among other things, "[s]elling or organizing any type of trust, limited liability company, or similar arrangement, as part of which Swanson advocates for the noncompliance of the income tax laws or tax evasion, misrepresents the tax savings realized by using the arrangement, or conceals the receipt of income".

[*6]  B.     <u>Property Transactions</u>

In 1999 petitioner and Mrs. Good transferred the properties at 32210 Bartel Street, 32188 Bartel Street, and 13450 County Road 91 to Treasures in a Field Investments.[5]  In 2002 Treasures in a Field Investments granted to petitioner and his family an unrecorded life estate with respect to the property at 13450 County Road 91.  In 2003 Treasures in a Field Investments sold the property at 32210 Bartel Street.[6]  In 2004 Treasures in a Field Investments sold the property at 32188 Bartel Street to Samuel J. Fitts and Iris K. Fitts for $120,000.

On a date not apparent from the record, petitioner and Mrs. Good began building a house at the 13450 County Road 91 property.  After the sale of the property at 32188 Bartel Street in 2004, they lived in the partially constructed

---

[5]With respect to at least one of the properties, petitioner effectively transferred the property on February 2, 1999.  However, neither petitioner nor any witness signed the instrument of transfer until September 13, 2000.

[6]Mrs. Good testified that the children of Samuel J. Fitts and Iris K. Fitts purchased the 32210 Bartel Street property.  The record contains a certificate of trust executed on June 9, 2003, by Shawn Dornstadter, petitioner's son-in-law.  The accompanying papers show that Treasures in a Field Investments transferred real property to Michael J. Fitts and Doxie H. Fitts.  We infer from the record that Michael J. Fitts and Doxie H. Fitts purchased the 32210 Bartel Street property.  The record does not disclose the amount of the selling price with respect to the sale.

[*7] house at 13450 County Road 91 while they continued its construction.[7]

Petitioner and Mrs. Good used the proceeds from the sale of the property at 32188 Bartel Street to fund construction of the house at 13450 County Road 91.

C.    Development of the Ministerial Trust

Until 2004 petitioner operated Prepare the Way Ministries through the Treasures in a Field Investments UBTO. In 2004 using a plan promoted by Glen Stoll, petitioner reorganized his alleged ministry into a ministerial trust.[8] Mr. Stoll has since been enjoined from engaging in such promotions.[9] To accomplish the reorganization, a resolution was prepared purportedly to show that the board of

---

[7]In 2004 Hurricane Ivan struck the house at 13450 County Road 91. Petitioner and Mrs. Good continued to live in a portion of the house while repairing the remainder using the insurance proceeds they received. Although Mrs. Good testified that she and petitioner deposited the insurance proceeds into one of the ministry bank accounts, petitioner did not identify any deposits as deposits of insurance proceeds and the Court could not identify any such deposits from information in the record.

[8]During the years in issue petitioner engaged in business transactions with Mr. Stoll. In 2008 Mr. Stoll, acting as trustee of the Work of His Hands Industries, an unincorporated ministerial trust, conveyed two parcels of land, previously owned by petitioner and Mrs. Good and conveyed to Treasures in a Field Investments, to Andy and Renee Knott.

[9]The parties stipulated that Mr. Stoll had been enjoined from engaging in the promotion of ministerial trusts as a tax planning strategy. Pursuant to Fed. R. Evid. 201, we take judicial notice of the injunction proceeding. United States v. Stoll, 2005 WL 1763617 (W.D. Wash. 2005).

**[*8]** trustees of Treasures in a Field Investments took action to terminate the operation of Treasures in a Field Investments as a UBTO, reorganize the entity as a "Church Ministry Trust", and change the entity name to Treasures in a Field. The resolution, which the board allegedly adopted, provided that the reorganized Treasures in a Field would be consistent with section 508(c)(1)(A) and section 501(c)(3).

During the years in issue petitioner held out Prepare the Way Ministries as a section 501(c)(3) organization. In 2004 Mrs. Good executed a document allegedly certifying that Prepare the Way Ministries had a "non-taxable status". However, Treasures in a Field failed to submit a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code. Instead, petitioner, on behalf of Prepare the Way Ministries, prepared a Form W-8BEN, Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding.[10] Petitioner materially altered the Form W-8BEN by adding an additional box labeled "church" under the portion of the form requesting identification of the type of beneficial owner. Petitioner used this Form W-8BEN

---

[10]Jason Evans, acting as "steward" for Prepare the Way Ministries, executed the Form W-8BEN.

**[*9]** to hold Prepare the Way Ministries out as a tax-exempt entity for transactions requiring third-party reporting.

### D. Bank Accounts

From December 31, 2001, through December 29, 2006, petitioner maintained an account ending in 9269 (account 9269) in the name of Prepare the Way Ministries at Regions Bank. The signature card for account 9269 showed petitioner, Mrs. Good, Shane M. Good, Julie A. Good, Mr. Dornstadter, and Summer C. Dornstadter, petitioner's daughter, as authorized signatories.[11] The employer identification number (EIN) petitioner gave to Regions Bank was 929099107 and was false. Petitioner used this false EIN to satisfy Region's Bank requirement for establishing an account.

From April 29, 2003, through December 29, 2006, petitioner maintained an account ending in 2952 (account 2952) in the name of Treasures in a Field Investments at AmSouth Bank.[12] Only petitioner and Mrs. Good were authorized

---

[11]The record does not identify the relationships among petitioner, Shane M. Good, and Julie A. Good, but we infer from the record as a whole that Shane M. Good and Julia A. Good are members of petitioner's family.

[12]From April 29, 2003, through July 31, 2004, account 2952 was held under the name Treasures in a Field Investments. Beginning in approximately August 2004 account 2952 was held under the name Prepare the Way Ministries d.b.a. Treasures in a Field Investments.

**[\*10]** signatories for account 2952. No EIN was provided to AmSouth Bank. We refer to account 9269 and account 2952 collectively as the ministry bank accounts.[13]

III.     Petitioner's Activities and Finances During the Years in Issue

During the years in issue petitioner went on numerous trips, including trips to Europe, which he testified at trial were missionary trips.[14] Petitioner admitted during his testimony that he also performed carpentry and landscaping work and trained horses and that he rented space in the 32210 and 32188 Bartel Street properties to families involved in his purported ministry.

Petitioner did not maintain a personal bank account separate from the ministry bank accounts, and he made no distinction between his personal finances and the finances of his alleged ministry. Petitioner deposited funds from his activities, including income he received for performing various services, into the ministry bank accounts, over which he had total dominion and control. The alleged ministry paid petitioner's living expenses, including room and board, as

---

[13]By collectively referring to the accounts as ministry bank accounts, we are not concluding that petitioner operated an entity that qualified as a church under the Code. We refer to the accounts as ministry bank accounts simply for convenience.

[14]He also testified that he conducted church meetings and other events at his home.

**[*11]** well as petitioner's tax bills on the property at 13450 County Road 91.

Petitioner and Mrs. Good used a check card tied to account 2952 at restaurants,

grocery stores, a veterinarian's office, home improvement stores, gas stations,

clothing stores, Wal-Mart, and Amazon.com. During 2002-04 petitioner and Mrs.

Good used funds in account 9269 to pay their mortgage and their cellular telephone

bills. Petitioner and Mrs. Good also used funds in the ministry bank accounts to pay

their American Express credit card bills.

IV.    Petitioner's Tax Reporting and the Notices of Deficiency

Petitioner failed to file Federal income tax returns for 2002-06. Accordingly,

respondent prepared substitutes for returns (SFRs) for petitioner for 2002-06

pursuant to section 6020(b). Respondent subsequently mailed to petitioner Letters

950 (so-called 30-day letters) with attached documents, including the SFRs, relating

to 2002-06.

During respondent's examination for petitioner, respondent's revenue agent

reconstructed petitioner's income by analyzing deposits into the ministry bank

accounts. The revenue agent determined that petitioner made total deposits as

follows:

| [*12] Year | Account 9269 | Account 2952 | Total |
|------|------|------|------|
| 2002 | $37,939 | -0- | $37,939 |
| 2003 | 17,256 | $37,913 | 55,169 |
| 2004 | 62,971 | 59,477 | 122,448 |
| 2005 | 61,631 | 87,356 | 148,987 |
| 2006 | 21,091 | 30,824 | 51,915 |

The revenue agent determined that petitioner made taxable deposits as follows:[15]

| Year | Account 9269 | Account 2952 | Total |
|------|------|------|------|
| 2002 | $37,643 | -0- | $37,643 |
| 2003 | 16,428 | $36,113 | 52,541 |
| 2004 | 58,183 | 59,013 | 117,196 |
| 2005 | 61,631 | 65,058 | 126,689 |
| 2006 | 21,091 | 27,767 | 48,858 |

---

[15]With respect to account 2952, the revenue agent tabulated the total deposits, eliminated nontaxable deposits, allocated taxable deposits between gross receipts from petitioner's Schedules C, Profit or Loss From Business, and rental income from Schedules E, Supplemental Income or Loss, and tabulated the results for each year. With respect to account 9269, the record contains a copy of the revenue agent's spreadsheet showing the individual line items for the account. Although the revenue agent identified certain deposits as nontaxable deposits, Schedule C gross receipts, and Schedule E rental income, respondent's revenue agent failed to tabulate the results. Accordingly, for 2002-04 we have calculated petitioner's total taxable deposits with respect to account 9269 by eliminating from petitioner's total deposits those deposits the revenue agent identified as nontaxable. For 2005-06, however, respondent's agent did not eliminate any deposits from account 2969 as nontaxable deposits.

**[*13]** The revenue agent treated the taxable deposits as income and allocated the income between petitioner's Schedules C and Schedules E as follows:[16]

Schedule C:

| Year | Account 9269 | Account 2952 | Total |
|---|---|---|---|
| 2002 | $24,659 | -0- | $24,659 |
| 2003 | 12,803 | $34,898 | 47,701 |
| 2004 | 57,880 | 58,513 | 116,393 |
| 2005 | 61,631 | 65,058 | 126,689 |
| 2006 | 21,091 | 27,767 | 48,858 |

Schedule E:

| Year | Account 9269 | Account 2952 | Total |
|---|---|---|---|
| 2002 | $12,984 | -0- | $12,984 |
| 2003 | 3,625 | $1,215 | 4,840 |
| 2004 | 303 | 500 | 803 |

On March 18, 2010, respondent mailed to petitioner notices of deficiency for the years in issue. Respondent determined that petitioner had unreported income as follows:[17]

---

[16]Respondent's revenue agent did not tabulate the total amount of Schedule C gross receipts for 2002-06 with respect to account 9269. On the basis of the spreadsheets, we find that the revenue agent determined that petitioner had unreported Schedule C gross receipts equal to the total amount of taxable deposits in account 9269 minus the Schedule E rental income with respect to that account for each year.

[17]The amounts of unreported income as finally determined in the notices of deficiency do not match in all respects the reconstruction of income prepared by the revenue agent.

**[*14]**

| Year | Schedule E | Schedule C | Total |
|------|-----------|-----------|-------|
| 2002 | $12,984 | $44,260 | $57,244 |
| 2003 | 4,840 | 54,405 | 59,245 |
| 2004 | 803 | 83,440 | 84,243 |
| 2005 | -0- | 132,990 | 132,990 |
| 2006 | -0- | 48,859 | 48,859 |

Respondent also determined that petitioner had self-employment income of $44,260,

$54,405, $83,440, $132,990, and $48,859, for 2002, 2003, 2004, 2005, and 2006,

respectively, and that petitioner had a short-term capital gain of $114,667 for

2004.[18]

V.    Petitioner's Tax Court Proceedings

After receiving the notices of deficiency, petitioner filed a petition with this

Court contesting respondent's determinations.  The Court set this case for trial at the

Mobile, Alabama, trial session.

Following trial we held the record open to allow petitioner the opportunity to

produce to respondent additional evidence, which, if appropriate, could then be

---

[18]The short-term capital gain of $114,667 was attributable to the sale of the 32188 Bartel Street property to Samuel J. Fitts and Iris K. Fitts.  On March 22, 2004, Prepare the Way Ministries agreed to sell the 32188 Bartel Street property to Samuel J. Fitts and Iris K. Fitts for $120,000.  Respondent determined that petitioner incurred fees of $5,323 and had "cost[s]" of $10 with respect to the sale. Respondent also determined that petitioner had a basis of zero in the property. Accordingly, respondent determined that petitioner realized gain of $114,667 from sale of the property.

**[\*15]** stipulated and submitted as part of the trial record. The parties did not submit

a supplemental stipulation.[19] Consequently, we decide this case on the trial record.

OPINION

I.    Presumption of Correctness and Burden of Proof
      With Respect to Tax Deficiencies

      A.    Presumption of Correctness

The Commissioner's deficiency determination ordinarily is entitled to a

presumption of correctness. See Bone v. Commissioner, 324 F.3d 1289, 1293

(11th Cir. 2003), aff'g T.C. Memo. 2001-43. However, when a case involves

unreported income, the U.S. Court of Appeals for the Eleventh Circuit, to which an

appeal in this case would lie absent a stipulation to the contrary, see sec.

7482(b)(1)(A), (2), has held that the Commissioner's determination of unreported

income is entitled to a presumption of correctness only if the determination is

supported by an evidentiary foundation linking the taxpayer to an income-producing

activity, see Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993),

aff'g T.C. Memo. 1991-636. A determination that is unsupported by any

evidence is arbitrary and erroneous, see Weimerskirch v. Commissioner, 596 F.2d

---

[19]On July 21, 2011, petitioner filed a document, with attached exhibits, titled "Petitioner's Status Report".

**[*16]** 358, 362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), but the required showing is minimal, see Blohm v. Commissioner, 994 F.2d at 1549 (citing Carson v. United States, 560 F.2d 693, 697 (5th Cir. 1977)).  Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the presumption of correctness applies and the burden of production shifts to the taxpayer to rebut that presumption by establishing that the Commissioner's determination is arbitrary or erroneous.  Id.

Respondent introduced evidence that petitioner directed the operations and financial affairs of Prepare the Way Ministries, Treasures in a Field Investments, and Treasures in a Field during the years in issue.  Respondent also introduced evidence that, in addition to his alleged ministry work, petitioner engaged in other secular work in exchange for payment and deposited proceeds from all his activities into ministry bank accounts.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (holding that bank deposits evidence receipt of income).  Respondent introduced evidence that petitioner, acting through Prepare the Way Ministries and Treasures in a Field Investments, sold the 32188 Bartel Street property.  Accordingly, we conclude that respondent laid the requisite minimal evidentiary foundation for the contested unreported income adjustments and that respondent's determinations are entitled to a presumption of correctness.

**[\*17]** Although his argument is not entirely clear, petitioner appears to contend that respondent's determinations are not entitled to the presumption of correctness because respondent acted arbitrarily in issuing the notices of deficiency. Petitioner contends that respondent's determinations constitute a "naked" assessment because respondent has failed to link petitioner's receipt of income to an income-generating activity.

The presumption of correctness does not apply when the Commissioner fails to make a determination and issues a "'naked' assessment without any foundation whatsoever". <u>United States v. Janis</u>, 428 U.S. 433, 441 (1976). As we stated above, however, respondent has introduced substantive evidence to establish that petitioner, acting through Prepare the Way Ministries, Treasures in a Field Investments, and Treasures in a Field, received payments, made deposits into various ministry bank accounts, engaged in income-producing activities during the years in issue, and sold real property in 2004. That evidence is more than sufficient to support respondent's determinations in the notices of deficiency. Accordingly, we find that the notices of deficiency are not "naked assessments".

B.      <u>Burden of Proof</u>

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations in a notice of deficiency are erroneous. <u>See</u> Rule 142(a); <u>Welch v.</u>

**[*18]** Helvering, 290 U.S. 111, 115 (1933). If, however, a taxpayer produces credible evidence[20] with respect to any factual issue relevant to ascertaining the taxpayer's tax liability and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he or she complied with the substantiation requirements, maintained all records required under the Code, and cooperated with reasonable requests by the Secretary[21] for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). The taxpayer bears the burden of proving that all of the section 7491(a) requirements have been satisfied. Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012).

Petitioner does not contend that section 7491(a)(1) applies, and the record establishes that he did not satisfy the section 7491(a)(2) requirements.

---

[20]Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in the taxpayer's favor, absent any contrary evidence. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

[21]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

**[\*19]** Consequently, petitioner bears the burden of proof as to any disputed factual issue.  See Rule 142(a).

II.    Parties' Arguments

Respondent contends that petitioner, a "carpenter", received taxable income and deposited that income into the ministry bank accounts.  Respondent contends that petitioner is liable for all taxable income deposited into the ministry bank accounts because petitioner exercised dominion and control over those accounts.  Respondent also contends that petitioner is liable for self-employment tax with respect to his unreported income.  Relying on the determination of unreported income, respondent further contends that petitioner had sufficient gross income to require him to file Federal tax returns for the years in issue and that he failed to file such returns.  Respondent also contends that petitioner is liable for a civil penalty for fraudulently failing to file his tax returns and additions to tax for failing to pay his Federal income tax and estimated tax for the years in issue.

Petitioner contends that he did not receive any taxable income during the years in issue.  Petitioner contends that he was a man of God engaged in the work of God during the years in issue and that everything he received or acquired belonged to God.  He further contends that he is exempt from Federal taxation because his activities during the years in issue were religious.  He contends that

[*20] any assets he acquired were for the purpose of his ministry and any disposition of those assets should not be taxed to him. Petitioner also contends that he had no obligation to file Federal tax returns because he did not have sufficient income to require him to file such returns.

We construe petitioner's argument, at least in part, to be that he was a minister entitled to exclude all income and gain he received and that he was entitled to all benefits under the Code that generally accrue to ministers and church organizations. Accordingly, we will consider: (1) whether petitioner's alleged ministry constituted a church, as that term is defined for Federal tax purposes; and (2) whether petitioner was a minister of the gospel, as that term is defined for Federal tax purposes.[22]

A.    Whether Petitioner's Alleged Ministry Constituted a Church

Section 501(a) provides that certain organizations, including churches, shall be exempt from Federal taxation. See also sec. 501(c)(3). A church that qualifies as an exempt organization for purposes of section 501 is not required to file an application for exemption from taxation. Sec. 508(c)(1)(A); see also sec. 1.508-1(a)(3)(i)(a), Income Tax Regs. Neither the Code nor the regulations define the term "church". See Found. of Human Understanding v. Commissioner, 88 T.C.

---

[22]Neither party specifically addressed these issues in their post-trial briefs.

**[\*21]** 1341, 1356 (1987).  However, as we have stated:  "Although every church may be a religious organization, not every religious organization is a church."  Id. at 1357.

Whether an entity is a church is a fact-specific inquiry.  See id.  In deciding whether an entity is a church, this Court primarily considers the entity's religious purposes and "the means by which its religious purposes are accomplished."  Id.  "'At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship.'"  Id. (quoting Am. Guidance Found., Inc. v. United States, 490 F. Supp. 304, 306 (D.D.C. 1980)).

The Internal Revenue Service (IRS) has articulated criteria that it uses to identify organizations that qualify for church status.  Id. at 1358.  The criteria include the following:

"(1) a distinct legal existence;

(2) a recognized creed and form of worship;

(3) a definite and distinct ecclesiastical government;

(4) a formal code of doctrine and discipline;

(5) a distinct religious history;

(6) a membership not associated with any other church or denomination;

[*22] (7) an organization of ordained ministers;

(8) ordained ministers selected after completing prescribed studies;

(9) a literature of its own;

(10) established places of worship;

(11) regular congregations;

(12) regular religious services;

(13) Sunday schools for religious instruction of the young; and

(14) schools for the preparation of its ministers."

Id. (quoting Internal Revenue Manual 7(10)69, Exempt Organizations Examination Guidelines Handbook 321.3(3) (Apr. 5, 1982)); see also Chambers v. Commissioner, T.C. Memo. 2011-114, slip op. at 14-15.  While we have declined to adopt these criteria as a test, we have found that the criteria are helpful in deciding whether an entity is a church.  See Found. of Human Understanding v. Commissioner, 88 T.C. at 1358.

Although Mrs. Good testified that petitioner held ministry meetings at his home, the record contains no evidence regarding the identities of those who attended the meetings and their relationship to petitioner or whether petitioner held these meetings regularly.  Petitioner offered only minimal testimony regarding his purported ministry activities.  He did not call any of his alleged

[*23] parishioners to testify.  Furthermore, the record shows that petitioner's

purported ministry did not have a distinct legal existence separate from petitioner.

See, e.g., Hughes v. Commissioner, T.C. Memo. 1994-139.  Petitioner failed to

introduce any credible evidence to support a finding that his purported ministry

activity satisfied any of the other criteria outlined above.

Petitioner had the burden of proving that his purported ministry activity

qualified as a church, and he failed to do so.[23]  See, e.g., Spiritual Outreach Soc'y v.

Commissioner, T.C. Memo. 1990-41, aff'd, 927 F.2d 335 (8th Cir. 1991).

B.      Whether Petitioner Was a Minister of the Gospel

Generally, compensation for services rendered is includable in gross income.

See sec. 61(a)(1).  However, section 107 provides that a minister of the gospel may

exclude from gross income a rental value or rental allowance provided to him as part

of his compensation.  See also sec. 1.107-1, Income Tax Regs.  A minister is an

individual "authorized to administer the sacraments, preach, and conduct services of

worship."  Salkov v. Commissioner, 46 T.C. 190, 194 (1966).  An individual is a

_____

[23]Even if we held that petitioner's alleged ministry constituted a church under
sec. 501, petitioner would still have to include in income funds deposited into the
ministry bank accounts because he exercised full control over those accounts and
used the funds to pay his personal expenses.  See, e.g., Chambers v. Commissioner,
T.C. Memo. 2011-114, slip op. at 23-24.

[*24] minister if, acting pursuant to his or her authority as a minister, he or she performs sacerdotal functions, conducts religious worship, participates in the maintenance of "religious organizations and their integral agencies", and performs "teaching and administrative duties at theological seminars." Sec. 1.107-1(a), Income Tax Regs.; see also Brannon v. Commissioner, T.C. Memo. 1999-370.

While petitioner testified as to his religious education and experience, his testimony alone is insufficient to convince us that he was a minister within the meaning of section 107. Petitioner failed to introduce any credible evidence to show that he was a minister or that he performed sacerdotal functions, participated in the conduct or control of religious boards, societies, or other agencies related to his religious affiliation, or performed any teaching or administrative duties at religiously affiliated institutions. Accordingly, we find that petitioner has not established that he was a minister for Federal tax purposes. See, e.g., Weeks v. Commissioner, T.C. Memo. 1987-198.

III. Petitioner's Unreported Income for the Years in issue

    A. Bank Deposits

        1. In General

Gross income includes "all income from whatever source derived". Sec. 61(a). A taxpayer must maintain books and records establishing the amount of his

**[\*25]** or her gross income. Sec. 6001. If a taxpayer fails to maintain and produce the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); sec. 1.446-1(b)(1), Income Tax Regs. The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

The bank deposits method is a permissible method of reconstructing income. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see also Langille v. Commissioner, T.C. Memo. 2010-49, aff'd, 447 Fed. Appx. 130 (11th Cir. 2011). Bank deposits constitute prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. at 77. The Commissioner need not show the likely source of a deposit treated as income, but the Commissioner "must take into account any nontaxable source or deductible expense of which * * * [he] has knowledge" in reconstructing income using the bank deposits method. See Clayton v. Commissioner, 102 T.C. at 645-646. However, the Commissioner need not follow any "leads" suggesting that a taxpayer has deductible expenses. DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

[*26] After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the Commissioner's use of the bank deposits method is unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. at 645. The taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable. See id.

Respondent introduced credible evidence that petitioner did not maintain adequate books and records with respect to his income.[24] Therefore, we find that it was reasonable for respondent to use an indirect method, i.e., the bank deposits method, to reconstruct petitioner's income. Accordingly, petitioner bears the burden of proving that respondent's determinations are arbitrary or erroneous. Petitioner's sole argument is that the deposits into the ministry bank accounts do

---

[24]Although not entirely clear, petitioner's contention appears to be that the IRS cannot require him to maintain or produce financial records because the IRS may not regulate religious activities and because such records are privileged. Sec. 6001 requires that "[e]very person liable for any tax" maintain records. Petitioner has offered no support for his contention that he personally is exempt from the recordkeeping requirement of sec. 6001. While exempt organizations are relieved of some recordkeeping requirements, the Commissioner never recognized Prepare the Way Ministries as an exempt organization under sec. 501(c)(3). See Church of Scientology v. Commissioner, 83 T.C. 381, 452 (1984), aff'd, 823 F.2d 1310 (9th Cir. 1987). Additionally, while the IRS must comply with specific procedures set forth in sec. 7611 before it can obtain church records, petitioner has not proven that he operated a church or that the records sought by respondent qualified as church records. See also Chambers v. Commissioner, slip op. at 20-21. Accordingly, we reject petitioner's argument.

[*27] not constitute taxable income to him because the deposits are attributable to his ministry and, as religious funds, are not subject to taxation.

2.  Whether Petitioner's Bank Deposits Constituted Taxable Income

Section 61(a) defines gross income as "all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, fringe benefits, and similar items; (2) Gross income derived from business; (3) Gains derived from dealings in property; (4) Interest; (5) Rents". The definition is construed broadly and extends to all accessions to wealth, clearly realized, over which the taxpayer has complete control. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). As the Supreme Court explained, a gain "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin v. United States, 343 U.S. 130, 137 (1952).

When the Commissioner reconstructs a taxpayer's income using the bank deposits method, the Commissioner may include in gross income "deposits into all accounts over which the taxpayer has dominion and control, not just deposits into the taxpayer's personal bank accounts." Chambers v. Commissioner, slip op. at 17-18; see also United States v. Goldberg, 330 F.2d 30, 38 (3d Cir. 1964); Davis

[*28] v. United States, 226 F.2d 331, 334-335 (6th Cir. 1955); Price v. Commissioner, T.C. Memo. 2004-103, slip op. at 25; Cohen v. Commissioner, T.C. Memo. 2003-42, slip op. at 9; Woods v. Commissioner, T.C. Memo. 1989-611, aff'd without published opinion, 929 F.2d 702 (6th Cir. 1991).  A taxpayer has dominion and control when the taxpayer is free to use the funds at will.  Rutkin, 343 U.S. at 137.  Use of funds for personal purposes indicates dominion and control.  Woods v. Commissioner, T.C. Memo. 1989-611.

The Court has extended this general principle to situations where a taxpayer has dominion and control over an account titled in the name of a church or other religious organization.  For example, in Woods, this Court held that "[a]mounts deposited into bank accounts in the name of the church constituted income of petitioners because they exercised total dominion and control over those funds and expended them for their personal living expenses and other personal purposes".  See also Whittington v. Commissioner, T.C. Memo. 2000-296, slip op. at 8-9.

Similarly, in Chambers v. Commissioner, slip op. at 19-24, this Court held that all deposits into church bank accounts properly were includable in the taxpayers' gross income because the taxpayers "fully controlled the church accounts, used money in those accounts at will, including to pay personal expenses, and were not accountable to anyone in their congregation for their use

[*29] of the church funds." While the taxpayers in <u>Chambers v. Commissioner</u>, slip op. at 23, testified that they used the money for mission trips and ministry expenses, this Court held that the church bank account funds were includable in the taxpayers' gross income because they failed to supply any receipts, records, or other evidence to substantiate the nature and use of the funds.

Petitioner testified that his primary occupation is minister of the gospel. He further testified that he performed all of his secular work as a volunteer and that any payment he received as a result of such work constituted a contribution to the ministry. With respect to the purported rental income, petitioner testified that he made living space in the Bartel Street properties available to families in his ministry, that the families contributed to Prepare the Way Ministries in exchange for use of the space, and that he suggested the amount of the monthly contribution.

Petitioner testified that he relied on direct donations from people and other ministries as well as the funds in the ministry bank accounts to support himself during the years in issue. He testified that he received no salary and instead received only housing and food in exchange for his services. He further testified that the money that came into the ministry was distributed to other people. He also testified that he and Mrs. Good used the money in the ministry bank accounts

[*30] to pay for ministry-related expenses. We do not find this testimony convincing or credible.

Respondent introduced the signature cards for the ministry bank accounts showing that only petitioner and his family members had signatory authority over the accounts. Respondent also introduced bank statements for the ministry bank accounts which show that petitioner and Mrs. Good regularly used the ministry bank accounts to pay their personal expenses. Finally, petitioner testified that he deposited payments he received for services rendered into the ministry bank accounts and that he used the funds in the ministry bank accounts to pay his personal expenses.

Petitioner had unfettered access to the funds in the ministry bank accounts. He used the money in the ministry bank accounts at will, including to pay his personal expenses and those of his family members. Petitioner did not maintain a separate personal bank account or attempt to separate his personal income and expenses from the income and expenses of his alleged ministry. Instead, petitioner used the ministry bank accounts as his own bank accounts and used the funds therein to pay his personal living expenses, mortgage, property taxes, and home construction costs.

[*31] Because petitioner exercised dominion and control over the ministry bank accounts, all taxable deposits into those accounts are includable in petitioner's gross income. See Chambers v. Commissioner, T.C. Memo. 2011-114; see also Burke v. Commissioner, 929 F.2d 110, 113 (2d Cir. 1991) (holding that rental income the taxpayer deposited into a church account constituted taxable income to the taxpayer upon receipt), aff'g in part, vacating in part, and remanding T.C. Memo. 1989-671.

3.     Reconstructing Petitioner's Income Using the Bank Deposits Method

Under the bank deposits method, the Commissioner may assume that all money deposited into the taxpayer's account is taxable income. DiLeo v. Commissioner, 96 T.C. at 868. However, as noted supra, the Commissioner must take into account any nontaxable source of income or deductible expense of which he has knowledge. Id. The Commissioner's use of the bank deposits method is not invalidated simply because some of the calculations are in error. See id.

Having decided that respondent acted reasonably in using an indirect method to reconstruct petitioner's income and having rejected petitioner's sole argument regarding whether such income constituted taxable income, we now review respondent's calculations of petitioner's taxable income for the years in

[*32] issue. To show the calculation of petitioner's taxable income, respondent introduced only the revenue agent's workpapers. However, with respect to 2002, 2003, and 2005, in the notice of deficiency respondent determined that petitioner had taxable income in excess of taxable deposits for those years as determined by the revenue agent. Respondent has introduced no evidence to show the calculation of petitioner's taxable income as set forth in the notice of deficiency. Accordingly, we will evaluate respondent's determination of petitioner's taxable income using the revenue agent's workpapers for the years in issue.

With respect to 2002, respondent's revenue agent determined that petitioner made taxable deposits into the ministry bank account of $37,643. The revenue agent determined that the taxable deposits for 2002 consisted of Schedule C gross receipts of $24,659 and Schedule E rental income of $12,984. However, in the notice of deficiency respondent determined that petitioner had Schedule C gross receipts of $44,260 and Schedule E rental income of $12,984. Respondent has not introduced any evidence to explain the difference between the revenue agent's calculation of Schedule C gross receipts totaling $24,659 and the $44,260 gross receipts figure in the notice of deficiency. Furthermore, an analysis of the ministry bank account statements for 2002 reveals that the revenue agent properly

[*33] reconstructed petitioner's Schedule C gross receipts for 2002. An analysis of the revenue agent's spreadsheet with respect to petitioner's Schedule E rental income shows that the revenue agent erroneously included in petitioner's income a number of checks that were drawn on, rather than deposited into, the ministry bank accounts. The revenue agent erroneously included $4,844 in petitioner's Schedule E rental income. Accordingly, we find that petitioner had Schedule C gross receipts of $24,659 and Schedule E rental income of $8,140 for 2002.

With respect to 2003, respondent's revenue agent determined that petitioner made taxable deposits into the ministry bank accounts of $52,541. The revenue agent determined that the taxable deposits for 2003 consisted of Schedule C gross receipts of $47,701 and Schedule E rental income of $4,840. However, in the notice of deficiency respondent determined that petitioner had Schedule C gross receipts of $54,405 and Schedule E rental income of $4,840. Respondent has not introduced any evidence to explain the difference between the revenue agent's calculation of Schedule C gross receipts totaling $47,701 and the $54,405 gross receipts figure in the notice of deficiency. Furthermore, an analysis of the ministry bank account statements for 2003 reveals that the revenue agent generally reconstructed petitioner's Schedule C gross receipts for 2003 properly, with the

[*34] following exception. We find that the revenue agent included the same check for $10 in petitioner's Schedule E rental income for 2002 and in his Schedule C gross receipts for 2003. Because we consider the $10 check as Schedule E rental income for 2002, we will eliminate $10 from the revenue agent's calculation of petitioner's Schedule C gross receipts for 2003. We also find that the revenue agent erroneously tabulated petitioner's Schedule E rental income. The revenue agent determined that petitioner deposited into the ministry bank accounts nine checks that constituted Schedule E rental income. The spreadsheet shows that the revenue agent included in his calculation of petitioner's Schedule E rental income three checks twice.[25] We will eliminate the duplications from the calculation of petitioner's Schedule E rental income. Accordingly, we find that petitioner had Schedule C gross receipts of $47,061 and Schedule E rental income of $3,140 for 2003.

---

[25]The revenue agent's spreadsheet shows the erroneous double inclusion of the following checks: (1) check No. 1001 for $635; (2) check No. 274 for $215; and (3) check No. 1016 for $850.

[*35] With respect to 2004,[26] respondent determined that petitioner had Schedule E rental income of $803 for 2004. Respondent included in petitioner's rental income a check for $500 from Samuel J. Fitts and Iris K. Fitts. This check constituted earnest money for the purchase of the real property at 32188 Bartel Street. Respondent properly included the earnest money as part of the selling price of the property. Therefore, the $500 check should be excluded from petitioner's 2004 Schedule E rental income. Accordingly, we find that petitioner had rental income of $303 for 2004.

With respect to 2005, respondent's revenue agent determined that petitioner made total taxable deposits into the ministry bank accounts of $126,689. The

---

[26]With respect to 2004, respondent's revenue agent determined that petitioner had Schedule C gross receipts of $116,393. The revenue agent included in petitioner's income a check for $9,000 that was deposited into account 9269. Although the bank statement for account 9269 shows that the check was returned for insufficient funds, respondent's revenue agent failed to exclude the $9,000 check from petitioner's taxable income.

Despite the revenue agent's error, we will refrain from adjusting petitioner's 2004 Schedule C gross receipts. Respondent determined in the notice of deficiency that petitioner had Schedule C gross receipts of $83,440, an amount that is $32,953 lower than the figure calculated by the revenue agent. The record supports an inference that respondent subtracted from petitioner's totaled Schedule C deposits amounts that constituted nontaxable income. Because the amount subtracted, $32,953, exceeds the amount of the check at issue, we find that petitioner is not entitled to an additional reduction in his Schedule C gross receipts for the value of the check. Accordingly, we will sustain respondent's determination with respect to petitioner's 2004 Schedule C gross receipts.

**[*36]** revenue agent determined that the taxable deposits for 2005 consisted of Schedule C gross receipts of $126,689. However, in the notice of deficiency respondent determined that petitioner had Schedule C gross receipts of $132,990. Respondent has not introduced any evidence to explain the difference between the revenue agent's calculation of Schedule C gross receipts totaling $126,689 and the $132,990 gross receipts figure in the notice of deficiency. Furthermore, our analysis of the ministry bank account statements for 2005 confirms that the revenue agent properly reconstructed petitioner's Schedule C gross receipts for 2005. Accordingly, we find that petitioner had Schedule C gross receipts of $126,689 for 2005.

In summary, we find that petitioner had Schedule C gross receipts of $24,659, $47,061, $83,440, and $126,689 for 2002, 2003, 2004, and 2005, respectively. We sustain respondent's determinations regarding petitioner's gross receipts for 2006. We also find that petitioner had Schedule E rental income of $8,140, $3,140, and $303 for 2002, 2003, and 2004, respectively.

[*37] B.    2004 Capital Gain

A taxpayer must recognize gain from the sale or exchange of property, unless the Code provides otherwise.[27]  Sec. 1001(c).  Section 1001(a) defines gain from the sale or other disposition of property as the excess of the amount realized on the sale of property over the adjusted basis of the property sold or exchanged.  See also sec. 1.61-6(a), Income Tax Regs.  Section 1011(a) generally provides that a taxpayer's adjusted basis for determining the gain from the sale or other disposition of property shall be its cost, adjusted to the extent provided by section 1016.  If the taxpayer constructed his own house, the taxpayer's basis is equal to the cost of building the house, including the amount paid for the lot.  Litterio v. Commissioner, T.C. Memo. 1992-524, aff'd, 21 F.3d 423 (4th Cir. 1994); Granger v. Commissioner, T.C. Memo. 1970-155.  The taxpayer has the burden of proving

---

[27]Sec. 121(a) allows a taxpayer to exclude from income gain on the sale or exchange of property if the taxpayer has owned and used such property as his principal residence for at least two of the five years immediately preceding the sale. Petitioner sold the 32188 Bartel Street property in 2004.  Mrs. Good testified that she and petitioner lived at the 32188 Bartel Street property before the 2004 sale. However, until 2003 petitioner owned another home, at 32210 Bartel Street.  The record does not show whether petitioner and Mrs. Good moved to the 32188 Bartel Street property before petitioner sold the 32210 Bartel Street property (i.e., before 2003) or immediately after the sale of the property in 2003.  Accordingly, we are unable to determine whether petitioner used the 32188 Bartel Street property as his principal residence for at least two of the five years preceding the sale of the property in 2004.  Petitioner has not established that he is entitled to exclude any gain from the sale of the property pursuant to sec. 121(a).

[*38] the basis of property for purposes of determining the amount of gain the taxpayer must recognize. O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), aff'g T.C. Memo. 1957-193; see also Kynell v. Commissioner, T.C. Memo. 1954-174.

The 2004 capital gain relates to the sale by Treasures in a Field Investments of the real property at 32188 Bartel Street. Petitioner does not dispute that he originally owned the 32188 Bartel Street property in his own name, that he transferred the property to Treasures in a Field Investments, and that Treasures in a Field Investments sold the property to Samuel J. Fitts and Iris K. Fitts in 2004 for $120,000. Although not entirely clear, petitioner's only dispute appears to be whether the proceeds from the sale of the property constitute taxable income to him.

Petitioner testified that all of the buildings, including the house at 32188 Bartel Street, "were church buildings where church activities occurred." Mrs. Good testified that she and petitioner resided in the house at 32188 Bartel Street. She also testified that the ministry sold the house. She further testified that she and petitioner used the proceeds from the sale of the house at 32188 Bartel Street to fund construction of their new house at 13450 County Road 91.

**[\*39]** Respondent introduced a copy of a resolution in which the Elder Board of Prepare the Way Ministries agreed to sell the 32188 Bartel Street property to Samuel J. Fitts and Iris K. Fitts. Respondent also introduced a copy of a purchase agreement dated February 6, 2004, showing the seller of the property as Treasures in a Field and the purchase price as $120,000, with a provision for $500 in earnest money. The record shows that petitioner deposited into account 2952 a $500 check from Samuel J. Fitts and Iris K. Fitts dated February 6, 2004.

The evidence shows that petitioner used Treasures in a Field Investments to conduct his business and sales transactions. While petitioner testified that he conducted some ministry activities from the house at 32188 Bartel Street, he also used the property as his personal residence. We find that Treasures in a Field Investments held title to and sold the 32188 Bartel Street property as petitioner's nominee.[28] Accordingly, petitioner must include in gross income gain from the sale of the 32188 Bartel Street property.

---

[28]"A nominee is an entity or individual who holds bare legal title to assets owned by another entity or individual." Lain v. Commissioner, T.C. Memo. 2012-99, slip op. at 13; see also Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000).

[*40] In calculating the gain on the sale of the 32188 Bartel Street property, respondent used the stated sale price of $120,000 and an adjusted basis of zero. Petitioner failed to introduce any evidence regarding his acquisition and construction costs, if any, for the 32188 Bartel Street property. While it is likely that petitioner incurred costs in acquiring the lot and building the house on the 32188 Bartel Street property, petitioner did not introduce any credible evidence regarding his cost basis or adjusted basis in the property. The record adequately supports respondent's determination that Treasures in a Field Investments, acting as nominee for petitioner, sold the property to Samuel J. Fitts and Iris K. Fitts for $120,000.

Neither petitioner nor respondent addressed the issue of whether petitioner's gain should be characterized as long-term or short-term capital gain. In the notice of deficiency respondent characterized petitioner's capital gain as short term. However, the record contains sufficient evidence for us to decide whether the gain should be characterized as long-term or short-term gain; accordingly, we consider this issue tried by consent of the parties. See Rule 41(b).

Section 1222(3) provides that long-term capital gain is "gain from the sale or exchange of a capital asset held for more than 1 year, if and to the extent such

**[*41]** gain is taken into account in computing gross income." While the record does not show when petitioner acquired the 32188 Bartel Street property, the record does show that in 1999 petitioner transferred the 32188 Bartel Street property to Treasures in a Field Investments. We infer that petitioner owned the 32188 Bartel Street property at the time of the 1999 transfer. Accordingly, we find that petitioner's gain from the sale of the 32188 Bartel Street property should be characterized as long-term capital gain.

We sustain respondent's determination as to the amount of petitioner's 2004 capital gain, but we do not sustain respondent's determination that the capital gain was short-term gain.

IV.    Self-Employment Tax

A taxpayer's self-employment income is subject to self-employment tax. Sec. 1401(a) and (b). Self-employment tax is assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes. Sec. 1401; see also sec. 1.1401-1(a), Income Tax Regs. Self-employment income is generally defined as "the net earnings from self-employment derived by an individual". Sec. 1402(b). "The term 'net earnings

[*42] from self-employment' means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions * * * attributable to such trade or business". Sec. 1402(a). Section 1402(c)(4) provides that the term "trade or business" does not include "the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" if an exemption under section 1402(e) is effective for the minister. See also Wingo v. Commissioner, 89 T.C. 922, 929 (1987). If the minister does not file the application for exemption within the prescribed time, the minister is subject to self-employment tax. Sec. 1402(e); see also Wingo v. Commissioner, 89 T.C. at 929-930.

Petitioner contends that he is not liable for self-employment tax because he is a minister. Petitioner, however, did not introduce any credible evidence to prove that he was a minister of a church, see supra p. 24, or that the Schedule C gross receipts determined by respondent were for the performance of services as a minister. Moreover, the record contains no credible evidence that petitioner submitted a Form 4361, Application for Exemption From Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners, for the years in issue that was approved by the IRS. Accordingly,

**[*43]** petitioner has failed to prove that he was exempt from self-employment tax during the years in issue.

We find that petitioner had self-employment income equal to the amounts of his Schedule C gross receipts for 2002-05 as found in this opinion, and we hold that petitioner is liable for self-employment tax with respect to these amounts. We sustain respondent's determination of self-employment tax for 2006.

V.     Obligation To File a Return

Petitioner contends that he was not obligated to file returns for the years in issue because he did not have sufficient income. See sec. 6012(a)(1)(A)(iv). Under section 6012(a)(1)(A)(iv), an individual who is entitled to make a joint return and whose gross income, when combined with the gross income of his spouse, exceeds the sum of twice the exemption amount and the standard deduction applicable to a joint return, must file a Federal income tax return. As discussed in Part III, see supra pp. 32-36, we find that petitioner had unreported income of $32,799, $50,201, $83,743, $126,689, and $48,859, for 2002, 2003, 2004, 2005, and 2006, respectively. Petitioner's income for the years in issue exceeded the described threshold and, consequently, petitioner had an obligation to file Federal income tax returns for those years.

**[*44]** VI.    Fraudulent Failure To File Returns

Section 6651(f) imposes an addition to tax of up to 75% of the amount of tax required to be shown on the return in the case of a taxpayer's fraudulent failure to file a tax return.  To prove that a taxpayer is liable for the penalty, the Commissioner must prove by clear and convincing evidence that (1) an underpayment of tax exists, and (2) some part of the underpayment is due to fraud.  Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. at 646.  If the Commissioner proves that any part of an underpayment is attributable to fraud, then the entire underpayment shall be treated as attributable to fraud unless the taxpayer shows by a preponderance of the evidence that a part was not so attributable.  See, e.g., sec. 6663(b).

A.    Underpayment of Tax

The Commissioner cannot rely upon the taxpayer's failure to meet the burden of proof on the issue of the existence of a deficiency to sustain the burden of proving the existence of an underpayment by clear and convincing evidence.  See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969).  However, the Commissioner need only show that there is some underpayment for each of the years in issue.  See Langworthy v. Commissioner, T.C. Memo. 1998-218.  Furthermore, when

[*45] allegations of fraud are intertwined with unreported and indirectly reconstructed income, the Commissioner may prove the existence of an underpayment by proving a likely source of income or disproving nontaxable sources alleged by the taxpayer. See Parks v. Commissioner, 94 T.C. at 661. As noted supra pp. 36, 41 petitioner failed to report income of $32,799, $50,201, $83,743, $126,689, and $48,859 for 2002, 2003, 2004, 2005, and 2006, respectively, and failed to report a capital gain of $114,667 for 2004. In proving the existence of petitioner's underpayments, respondent does not rely solely on petitioner's failure to meet his burden of proof. Respondent appropriately reconstructed petitioner's taxable income using the bank deposits method, and the reconstruction demonstrates clearly and convincingly that petitioner had an underpayment of tax for each of the years in issue. Furthermore, respondent has proven a likely source of petitioner's unreported income, namely, petitioner's construction, carpentry, and rental activities. Accordingly, respondent has proven by clear and convincing evidence that petitioner underpaid his Federal income tax for each of the years in issue.

### B. Fraudulent Intent

#### 1. Introduction

If fraud is determined for multiple taxable years, the Commissioner's burden "applies separately for each of the years." Temple v. Commissioner, T.C.

**[\*46]** Memo. 2000-337, slip op. at 24-25, aff'd, 62 Fed. Appx. 605 (6th Cir. 2003). The Commissioner satisfies this burden by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes." DiLeo v. Commissioner, 96 T.C. at 874. Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See DiLeo v. Commissioner, 96 T.C. at 874. Fraud is never presumed and must be established by independent evidence of fraudulent intent. See Baumgardner v. Commissioner, 251 F.2d 311, 322 (9th Cir. 1957), aff'g T.C. Memo. 1956-112. Fraud may be shown by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. See Petzoldt v. Commissioner, 92 T.C. at 699; Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. See Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Any conduct likely to mislead or conceal may constitute an affirmative act of evasion, see Spies v. United States, 317 U.S. 492, 499 (1943), and an intent to

**[*47]** mislead may be inferred from a pattern of such conduct, see Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. However, fraud is not proven when a court is left with only a suspicion of fraud, and even a strong suspicion is not sufficient to establish a taxpayer's liability for the fraud penalty. See Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), aff'g in part, rev'g in part on another ground T.C. Memo. 1955-9; Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Green v. Commissioner, 66 T.C. 538, 550 (1976).

### 2. Badges of Fraud

Because it is difficult to prove fraudulent intent by direct evidence, the Commissioner may establish fraud by circumstantial evidence, which includes various "badges of fraud" (hereinafter, factors) on which the courts often rely. See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; DiLeo v. Commissioner, 96 T.C. at 875. These factors focus on whether the taxpayer engaged in certain conduct that is indicative of fraudulent intent, such as: (1) understating income; (2) failing to maintain adequate records; (3) offering implausible or inconsistent explanations; (4) concealing income or assets; (5) failing to cooperate with tax authorities; (6) engaging in illegal activities; (7) providing incomplete or misleading information to the taxpayer's tax

**[\*48]** return preparer; (8) offering false or incredible testimony; (9) filing false documents, including filing false income tax returns; (10) failing to file tax returns; and (11) engaging in extensive dealings in cash.[29]  See Bradford v. Commissioner, 796 F.2d at 307-308; Parks v. Commissioner, 94 T.C. 654, 664-665 (1990); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Lipsitz v. Commissioner, 21 T.C. 917 (1954), aff'd, 220 F.2d 871 (4th Cir. 1955); see also Morse v. Commissioner, T.C. Memo. 2003-332, slip op. at 8-9, aff'd, 419 F.3d 829 (8th Cir. 2005).  The existence of any one factor is not dispositive, but the existence of several factors is persuasive circumstantial evidence of fraud.  See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Petzoldt v. Commissioner, 92 T.C. at 700.

Respondent contends, and our review of the record shows, that the following factors are present in this case:  (1) petitioner underreported his income for the years in issue; (2) petitioner concealed income and assets during the years in issue; (3) petitioner failed to cooperate with tax authorities regarding the years in issue; (4) petitioner filed false documents; and (5) petitioner failed to file tax returns for the years in issue.  Respondent also contends that petitioner's reliance

---

[29]These factors are nonexclusive.  See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).

**[\*49]** on frivolous arguments during these proceedings demonstrates his fraudulent intent. We analyze each factor below.

### a. Understating Income

A pattern of substantially underreporting income for several years is strong evidence of fraud, particularly if the reason for the understatements is not satisfactorily explained or is not due to innocent mistake. See Holland v. United States, 348 U.S. 121, 137-139 (1954); Spies, 317 U.S. at 499; Webb v. Commissioner, 394 F.2d at 379; see also Green v. Commissioner, T.C. Memo. 2010-109 (finding that a satisfactory explanation may weigh against a finding of fraud). The U.S. Court of Appeals for the Eleventh Circuit has stated that "a '[c]onsistent and substantial understatement of income is by itself strong evidence of fraud.'" Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986) (quoting Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), aff'g T.C. Memo. 1959-172), aff'g T.C. Memo. 1985-63.

Petitioner failed to file Federal income tax returns for the five years in issue. He thus failed to report income of $32,799, $50,201, $83,743, $126,689, and $48,859 for 2002, 2003, 2004, 2005, and 2006, respectively, and a capital gain of $114,667 for 2004.

[*50] Although not entirely clear, petitioner's contention appears to be that he underreported his income because he believed all of his income was attributable to his alleged ministry. In the light of the other evidence in the record, we are not prepared to find that petitioner simply was mistaken regarding his personal obligation to file income tax returns and report income. Furthermore, as this Court has stated, a taxpayer's "mistaken contention indicates little about whether * * * [the taxpayer] had fraudulent intent." Chambers v. Commissioner, slip op. at 35.

Petitioner did not report any income for the years in issue. Given the substantial amounts of petitioner's unreported income, his pattern of underreporting his income, and his lack of a satisfactory explanation for the understatements, we conclude that petitioner's understatements are persuasive evidence of fraudulent intent. See, e.g., Morse v. Commissioner, 419 F.3d at 832; see also Lain v. Commissioner, T.C. Memo. 2012-99, slip op. at 12.

### b. Concealing Assets or Income

An intent to evade tax may be inferred by "concealment of assets or covering up sources of income". Spies, 317 U.S. at 499; Ruark v. Commissioner, 449 F.2d 311, 312-313 (9th Cir. 1971), aff'g T.C. Memo. 1969-48. A taxpayer's

[*51] use of "a complex series of financial transactions and nominees is a badge of fraud." Plotkin v. Commissioner, T.C. Memo. 2011-260, slip op. at 43. This Court has previously held that a taxpayer's use of a UBTO to conceal income supports a finding of fraud. Simmons v. Commissioner, T.C. Memo. 2009-283, slip op. at 10-11. The mere existence of a paper trail documenting a taxpayer's income or expenses does not negate a finding of fraudulent intent. See Evans v. Commissioner, T.C. Memo. 2010-199, slip op. at 16-17.

Petitioner concealed his assets through a series of transactions designed to transfer his assets to various organizations, including Treasures in a Field Investments, a UBTO. Petitioner later transferred his assets from Treasures in a Field Investments to a ministerial trust, Treasures in a Field. Despite these transfers, petitioner continued to control the use and disposition of his assets. Furthermore, petitioner deposited all of his income into accounts titled in the name of Prepare the Way Ministries and Treasures in a Field Investments.

Petitioner appears to contend that he did not conceal assets because he deposited all proceeds into ministry bank accounts and recorded all properties that the ministry owned. First, this Court notes that the mere existence of a paper trail documenting the transfer of assets does not negate a finding of fraud. Second, petitioner's contention is refuted by the evidence showing that petitioner engaged

[*52] in a series of transactions the purpose of which was tax avoidance.

Accordingly, this factor supports a finding of fraud.

c.  Failing To Cooperate With Tax Authorities

Failure to cooperate with revenue agents during an investigation is a badge of fraud.  See Korecky v. Commissioner, 781 F.2d at 1568; Lord v. Commissioner, 525 F.2d 741, 747-748 (9th Cir. 1975), aff'g in part, rev'g in part 60 T.C. 199 (1973); Grosshandler v. Commissioner, 75 T.C. 1, 20 (198). This failure is persuasive evidence of a taxpayer's guilty knowledge.  See Prof'l Servs. v. Commissioner, 79 T.C. 888, 932-933 (1982).  A taxpayer's failure to cooperate with the Commissioner and the Court during the pretrial and trial proceedings also supports a finding of fraud.  See Smith v. Commissioner, 91 T.C. 1049, 1052, 1059-1060 (1988), aff'd, 926 F.2d 1470 (6th Cir. 1991); Rice v. Commissioner, T.C. Memo. 2003-208, slip op. at 15.

Petitioner failed to cooperate with respondent's revenue agent during respondent's investigation of petitioner.  Accordingly, respondent was forced to subpoena petitioner's ministry bank account records to reconstruct petitioner's income.  Petitioner also failed to respond to a summons issued by respondent.

In addition, petitioner failed to cooperate with respondent's counsel and with the Court in preparing this case for trial.  Petitioner failed to cooperate with

[*53] respondent's counsel in preparing a stipulation of facts as required by our standing pretrial order. He failed to respond properly to respondent's requests for admissions. At trial petitioner failed to respond to the questions posed by respondent's counsel, continuing to assert an unidentified privilege. Accordingly, we find that petitioner failed to cooperate with tax authorities, and this finding supports a finding of fraud.

        d.      Filing False Documents

Fraudulent intent may be inferred when a taxpayer files a document intending to conceal, mislead, or prevent the collection of tax. See Spies, 317 U.S. at 499. Filing false documents with the IRS constitutes "an 'affirmative act' of misrepresentation sufficient to justify the fraud penalty." Zell v. Commissioner, 763 F.2d 1139, 1146 (10th Cir. 1985), aff'g T.C. Memo. 1984-152; see also Ernle v. Commissioner, T.C. Memo. 2010-237, slip op. at 9. A taxpayer's creation of false documents, see Fairey v. Commissioner, T.C. Memo. 2005-129, slip op. at 24-25, and/or use of a false EIN, see Chambers v. Commissioner, slip op. at 39, supports a finding of fraud, see also Vetrano v. Commissioner, T.C. Memo. 2000-128.

Petitioner used a false EIN when he opened account 2952 at Regions Bank. He also prepared a materially altered and false Form W-8BEN. Petitioner

**[\*54]** stipulated that he used the materially altered and false Form W-8BEN to hold out his purported ministry as a tax-exempt entity. We find that he engaged in this practice of creating and using false documents to evade the payment of Federal tax. Consequently, this factor supports a finding of fraud.

        e.      Failing To File Tax Returns

A taxpayer's failure to file tax returns is a badge of fraud. See Petzoldt v. Commissioner, 92 T.C. at 701. While a failure to file returns, even over an extended period, does not establish fraud per se, see Grosshandler v. Commissioner, 75 T.C. at 19, an extended pattern of failing to file returns may be persuasive circumstantial evidence of fraud, see Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), aff'g T.C. Memo. 1975-368.

Petitioner failed to file returns for 2002-06. Petitioner's extended pattern of failing to file returns constitutes persuasive circumstantial evidence of fraud.

        f.      Asserting Frivolous Arguments

A taxpayer's assertion of frivolous arguments may provide evidence supporting a finding of fraud. See Kotmair v. Commissioner, 86 T.C. 1253, 1259-1261 (1986); Worsham v. Commissioner, T.C. Memo. 2012-219, slip op. at 19; Lain v. Commissioner, slip op. at 14; DeVries v. Commissioner, T.C. Memo. 2011-185, slip op. at 21-22.

**[*55]** During the course of these proceedings, petitioner repeatedly raised frivolous and groundless arguments. The U.S. Court of Appeals for the Eleventh Circuit has held similar arguments to be frivolous and without merit. See United States v. Morgan, 419 Fed. Appx. 958, 959 (11th Cir. 2011) (taxpayers' argument that they were not involved in a "trade or business" was frivolous); United States v. Morse, 532 F.3d 1130, 1132-1133 (11th Cir. 2008) (taxpayer's assertion that the IRS had no power over the taxpayer was meritless). We repeatedly cautioned petitioner against asserting frivolous and groundless arguments. Despite these admonishments, petitioner continued to assert such arguments. Accordingly, this factor supports a finding of fraud.

C.    Conclusion

Respondent has proven by clear and convincing evidence that petitioner underpaid his tax liabilities for 2002-06 and that some part of petitioner's underpayment for each year was due to fraud. Petitioner has not argued or introduced any credible evidence to prove that any portion of his underpayments was not attributable to fraud. He has not introduced any credible evidence to show

**[\*56]** that he acted without fraudulent intent.  Accordingly, we hold that petitioner is liable for the section 6651(f) fraudulent failure to file additions to tax.[30]

VII.   Sections 6651(a)(2) and 6654(a) Additions to Tax

If the taxpayer assigns error to the Commissioner's determination that a taxpayer is liable for an addition to tax, the Commissioner has the burden, under section 7491(c), of producing evidence with respect to the liability of the taxpayer for the addition to tax.  See Higbee v. Commissioner, 116 T.C. at 446-447.  To meet his burden of production, the Commissioner must come forward with sufficient evidence that it is appropriate to impose the addition to tax.  Id.  Once the Commissioner meets his burden, the taxpayer must come forward with evidence sufficient to persuade this Court that the determination is incorrect.  Id.

Respondent determined that petitioner is liable under section 6651(a)(2) for additions to tax for failure to timely pay tax shown on a return.  Section 6651(a)(2) imposes an addition to tax for failure to pay the amount of tax shown on a taxpayer's Federal income tax return on or before the payment due date, unless such failure is due to reasonable cause and is not due to willful neglect.  The section 6651(a)(2) addition to tax applies only when an amount of tax is shown on

---

[30]The amounts of the sec. 6651(f) additions to tax for 2002-05 must be adjusted to reflect the adjustments to gross receipts calculated in this opinion.

**[\*57]** a return filed by the taxpayer or prepared by the Secretary.  Sec. 6651(a)(2), (g)(2); Cabirac v. Commissioner, 120 T.C. 163, 170 (2003).  When a taxpayer has not filed a return, the section 6651(a)(2) addition to tax may not be imposed unless the Secretary has prepared an SFR that satisfies the requirements of section 6020(b).  See Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

Respondent satisfied his burden of production by introducing into evidence SFRs for the years in issue that satisfy the requirements of section 6020(b).  Consequently, petitioner had the burden of introducing evidence to show that his failure to pay was due to reasonable cause.  He did not do so.  Petitioner did not advance any argument regarding the section 6651(a)(2) additions to tax and introduced no credible evidence to show reasonable cause for his failure to pay tax shown on the returns.  Accordingly, we sustain respondent's determination with respect to petitioner's liability for the additions to tax under section 6651(a)(2) for the years in issue.[31]

Respondent also determined that petitioner is liable for additions to tax for failure to pay estimated tax under section 6654.  Section 6654 imposes an addition

---

[31]The amounts of the sec. 6651(a)(2) additions to tax for 2002-05 must be adjusted to reflect the adjustments to gross receipts calculated in this opinion.

**[\*58]** to tax on an individual who underpays his estimated tax.[32]  The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability.  Sec. 6654(c) and (d).  Each required installment of estimated tax is equal to 25% of the "required annual payment".  Sec. 6654(d).  In general, the "required annual payment" is equal to the lesser of (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100% of the tax shown on that return.  Sec. 6654(d)(1)(A), (B), and (C).  A taxpayer has an obligation to pay estimated tax only if he has a "required annual payment".  Wheeler v. Commissioner, 127 T.C. at 212; see also Mendes v. Commissioner, 121 T.C. 308, 324 (2003).

Petitioner did not make any estimated tax payments for the years in issue. Respondent introduced deemed stipulations that petitioner failed to file returns for 2002-06.  On the basis of this information and the evidence with respect to petitioner's income for the years in issue, we are able to conclude that petitioner had required annual payments for 2003-06.  However, we are unable to conclude

---

[32]Unless a statutory exception applies, the sec. 6654(a) addition to tax is mandatory.  See sec. 6654(a), (e); Recklitis v. Commissioner, 91 T.C. 874, 913 (1988).

**[\*59]** that petitioner had a required annual payment for 2002 because respondent failed to introduce any evidence as to whether petitioner filed a return for 2001. See Wheeler v. Commissioner, 127 T.C. at 211-212. Accordingly, we reject respondent's determination as to the section 6654(a) addition to tax for 2002 and sustain respondent's determinations as to petitioner's liability for the section 6654(a) additions to tax for 2003-06.[33]

VIII. Section 6673 Penalty

Section 6673(a)(1) provides that this Court may require the taxpayer to pay a penalty not in excess of $25,000 whenever it appears to this Court that: (1) the proceedings were instituted or maintained by the taxpayer primarily for delay, (2) the taxpayer's position is frivolous or groundless, or (3) the taxpayer unreasonably failed to pursue available administrative remedies. A taxpayer's position is frivolous or groundless if it is "'contrary to established law and unsupported by a reasoned, colorable argument for change in the law.'" Williams v. Commissioner, 114 T.C. 136, 144 (2000) (quoting Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)).

---

[33]The amounts of the sec. 6654 additions to tax for 2003-05 must be adjusted to reflect the adjustments to gross receipts calculated in this opinion.

[*60] During the pretrial proceedings this Court warned petitioner that if he continued to assert frivolous or groundless positions, this Court would consider imposing a penalty under section 6673. This Court issued the warning to petitioner in three different orders before trial. At trial this Court again warned petitioner that if he continued to assert frivolous or groundless positions, this Court would consider imposing a penalty under section 6673. Despite this warning, petitioner asserted the same arguments in his posttrial brief.

Respondent did not request that we impose a penalty pursuant to section 6673, and in the exercise of our discretion we will not impose a section 6673 penalty on petitioner. However, we warn petitioner that if in the future he maintains groundless positions in this Court, he runs the risk that he will be sanctioned in accordance with section 6673(a)(1).

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.